## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SIERRA CLUB,
2101 Webster Street, Suite 1300
Oakland, California 94612,

      Plaintiff,


vs.                                                            Civil Action No.:

GINA MCCARTHY, in her official capacity as
Administrator of the United States
Environmental Protection Agency,
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460,

      Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### I.  STATEMENT OF THE CASE

1.     This is a civil action for declaratory and injunctive relief brought by plaintiff

Sierra Club pursuant to the Clean Air Act, 42 U.S.C. § 7401 *et seq.,* against defendant Gina

McCarthy ("Administrator McCarthy") in her official capacity as the Administrator of the United

States Environmental Protection Agency ("EPA").  The action challenges Administrator

McCarthy's failure to perform a non-discretionary, mandatory duty imposed by the Clean Air

Act.

2.     This action seeks an order requiring defendant Administrator McCarthy to

perform her non-discretionary duty to grant or deny a petition filed by the Sierra Club on April

11, 2016 (hereinafter "Petition") requesting that EPA object to the Title V operating permit

issued by the Utah Department of Air Quality ("Utah") for PacifiCorp's coal-fired Hunter Plant

located in Castle Dale, Utah.  *See* 42 U.S.C. § 7661d(b)(2) (authorizing such petitions).

3.      Although more than sixty (60) days have passed, Administrator McCarthy has not

granted or denied Sierra Club's Petition, in contravention of a mandatory sixty (60) day deadline

for action.  42 U.S.C. § 7661d(b)(2).  She is, therefore, in violation of her nondiscretionary duty

under the Clean Air Act.

4.      Accordingly, Sierra Club seeks a declaration that Administrator McCarthy is in

violation of the Clean Air Act and an order compelling Administrator McCarthy to grant or deny

Plaintiff's Petition by a date certain.

## II. JURISDICTION

5.      The instant action arises under the Clean Air Act, 42 U.S.C. § 7661d(b).  This

Court has jurisdiction over Sierra Club's claims pursuant to 42 U.S.C. § 7604(a)(2) and 28

U.S.C. §§ 1331, 1361.  The relief requested by Sierra Club is authorized pursuant to 42 U.S.C. §

7604 and 28 U.S.C. §§ 1361, 2201, and 2202.

## III. NOTICE

6.      By certified letter dated July 6, 2016, Sierra Club provided Administrator

McCarthy with written notice pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. §§ 54.2 and 54.3 of

its claim concerning EPA's failure to take action on the Petition and of its intent to bring suit to

remedy this Clean Air Act violation.  A copy of this notice is provided as Exhibit A to this

Complaint.

7.      Administrator McCarthy received that notice no later than July 11, 2016.

8.      Over sixty (60) days have passed since Sierra Club provided its notice of intent to

sue as required under the Clean Air Act, and Administrator McCarthy has not remedied the

violation alleged in this Complaint by granting or denying Sierra Club's Petition.  Consequently,

2

a present and actual controversy exists between the parties.

## IV.  VENUE

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1).  A

substantial part of the events or omissions giving rise to Sierra Club's claim occurred in the

District of Columbia.  Defendant Administrator McCarthy is an officer of the United States, sued

for acts and omissions in her official capacity, and her official residence is in the District of

Columbia.  In addition, EPA has its principal office in the District of Columbia.

## V.  PARTIES

10.      Plaintiff Sierra Club is the oldest and largest grassroots environmental group in

the United States, with over 638,000 members nationally, including approximately 4,000

members in Utah.  Sierra Club's mission is to explore, enjoy, and protect the wild places of the

Earth; to practice and promote the responsible use of the Earth's resources and ecosystems; to

educate and enlist humanity to protect and restore the quality of the natural and human

environment; and to use all lawful means to carry out these objectives.  Sierra Club and its

members are greatly concerned about the effects of air pollution on human health and the

environment and have a long history of involvement in activities related to air quality and

permitting of air pollution sources under the Clean Air Act.

11.      Sierra Club is a "person" within the meaning of 42 U.S.C. § 7602(e).  As such,

Sierra Club may commence a civil action under 42 U.S.C. § 7604(a).

12.      Sierra Club has members in Utah whose health, economic, aesthetic, and

environmental interests have been, are being, and will be adversely affected by EPA's acts and

omissions complained of herein.  Sierra Club members live, raise their families, work, attend

school, travel, and recreate in areas where they are exposed to dangerous air pollutants emitted

from PacifiCorp's Hunter Plant. Hunter's air pollutants, which include visible emissions, as well as particulate matter, sulfur dioxide, and nitrogen oxides, are associated with a variety of adverse effects on human health, impairment of visibility and damage to wildlife and vegetation. Hunter's permit allows the plant to release such air pollutants, thereby threatening the health of Sierra Club members and their use and enjoyment of the air, environment, wildlife, scenery, and outdoor views. Administrator McCarthy's acts and omissions injure Sierra Club members by threatening their health and welfare, and by denying them measures and procedures provided under the Clean Air Act to protect their health and welfare from air pollution in places where they live, work, recreate, and conduct other activities.

13. Sierra Club's and its members' interests have been, are being, and will continue to be, harmed by EPA's failure to act on Sierra Club's Petition for objection to Hunter's Title V permit. EPA's failure to respond to Sierra Club's Petition creates doubt and concern for Sierra Club members about whether the Hunter Plant's Title V operating permit complies with the requirements of the Clean Air Act and protects them from exposure to pollutants to the extent required by law.

14. The acts and omissions of EPA alleged herein further deprive Sierra Club and its members of procedural rights and protections to which they are entitled. During the permitting process for the Hunter Plant, Sierra Club provided comments critical of the terms and conditions of the Hunter Plant's Title V operating permit. Subsequently, Sierra Club petitioned EPA to object to the issuance of the permit. The Clean Air Act gives Sierra Club a procedural right to a timely decision on its Petition. EPA's failure to take action on Sierra Club's Petition prevents Sierra Club and its members from challenging an unfavorable EPA decision or from benefitting from a favorable decision on the Petition.

15.     The Clean Air Act violations alleged in this Complaint have injured and continue to injure the interests of Sierra Club and its members.  Granting the relief requested in this lawsuit would redress these injuries.

16.     Gina McCarthy is the Administrator of the EPA.  The Administrator is responsible for implementing the Clean Air Act, including the requirement to grant or deny Sierra Club's Petition within sixty (60) days.  Administrator McCarthy is sued in her official capacity.

## VI.  LEGAL BACKGROUND

17.     The Clean Air Act aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1).  To help meet this goal, the 1990 amendments to the Clean Air Act created the Title V permit program, an operating permit program that applies to all major sources of air pollution.  *See* 42 U.S.C. §§ 7661-7661f.

18.     Major sources of air pollution must obtain a valid Title V operating permit, which is designed to include all applicable air pollution control requirements in a single document.  *See* 42 U.S.C. §§ 7661a(a) and 7661c(a).

19.     The Clean Air Act provides that the EPA Administrator may approve state programs to administer the Title V permitting program with respect to sources within their borders.  *See* 42 U.S.C. § 7661a(d).

20.     EPA fully approved Utah's administration of its Title V permit program in 1995.  *See* Air Conservation Act, Utah Code Ann. § 19-2-109.1 *et seq.* and its implementing regulations, Utah Admin. Code r. 307-415-1 *et seq.*; *see also* 40 C.F.R. Part 70, Appendix A Utah (a); 60 Fed. Reg. 30,192, 30,194-95 (June 8, 1995).

21.     Before a state with an approved Title V permit program may issue a Title V

permit, the state must forward the proposed Title V permit to EPA.  42 U.S.C. § 7661d (a)(1)(B).

EPA then has forty-five (45) days to review the proposed permit.  42 U.S.C. § 7661d(b).  EPA

must object to the issuance of the permit if EPA finds that the permit does not comply with all

applicable provisions of the Clean Air Act.  42 U.S.C. § 7661d(b)(1).

22.     After EPA's 45-day review period expires, "any person may petition the

Administrator within 60 days" to object to the Title V permit.  42 U.S.C. § 7661d(b)(2).

23.     The Clean Air Act requires that "[t]he Administrator shall grant or deny such

petition within 60 days after the petition is filed."  42 U.S.C. § 7661d(b)(2).

24.     If EPA objects to a permit, the permitting authority may not issue the permit

unless it is revised.  42 U.S.C. § 7661d(b)(3).  If the permitting authority has issued a permit

prior to receipt of an objection by the Administrator, the Administrator shall modify, terminate,

or revoke such permit.  *Id*.

25.     If EPA fails to comply with a non-discretionary duty, such as acting on a petition

to object within the statutorily mandated time frame, the Clean Air Act allows any person to

bring suit to compel EPA to perform its duty.  *See* 42 U.S.C. § 7604(a).

## VII.  FACTUAL BACKGROUND

26.     The Hunter Plant is a major stationary source of air pollution and is located in

Castle Dale, Utah.  The facility primarily consists of three coal-fired boilers.

27.     The Title V Permit for the Hunter Plant was originally issued on January 7, 1998,

and that permit was original designated to expire on January 7, 2003.

28.     PacifiCorp submitted a Title V permit renewal application in December of 2001,

but Utah did not issue a draft Title V renewal permit for the Hunter Plant for public comment

until September 15, 2015, after Sierra Club filed a mandamus action in state court seeking to

force the state to issue the renewal.  *See Sierra Club vs. Bryce Bird, et al.*, Civil Case No. 150905990 (3rd District Utah) (filed Aug. 21, 2015).

29.     Sierra Club submitted extensive public comments to Utah on the draft Hunter Title V renewal permit on November 13, 2015, during the public comment period.

30.     Utah issued a brief "Response to Public Comments" memorandum on January 11, 2016, which largely ignored Sierra Club's comments, and submitted the proposed Title V Permit to EPA for its forty-five (45) day review in accordance with the Clean Air Act on that same date.

31.     EPA's forty-five (45) day review period ended on February 26, 2016.

32.     EPA did not object to the proposed Hunter Title V renewal permit and Utah issued the permit in its final form on March 3, 2016.

33.      On April 11, 2016, Sierra Club filed a Petition requesting that the Administrator object to the issuance of the Hunter Title V operating permit because the permit failed to include all applicable requirements and/or was otherwise unlawful and because Utah unlawfully failed to provide a meaningful response to the majority of Sierra Club's public comments.

34.     More specifically, the issues addressed in Sierra Club's Petition involve:

- PacifiCorp's unlawful performance of projects pertaining to boiler components and turbine upgrades in the late 1990's that should have been permitted pursuant to the applicable Prevention of Significant Deterioration (PSD) and Approval Order permitting requirements, including emissions limits reflecting Best Available Control Technology (BACT) and assurance of compliance with the national ambient air quality standards (NAAQS) and PSD increments, among other things.

- The unlawful and invalid imposition of Utah's 10-year Plantwide Applicability Limits (PAL) limits for the Hunter Plant for $SO_2$ and $NO_x$.

- The failure of the Hunter Title V operating permit to impose Utah Approval Order

requirements, including BACT, on Hunter Unit 1 for unpermitted modifications in 2010, including the replacement of Unit 1's economizer, low temperature superheater, finishing superheater, and pulverizer components, as well as high pressure/intermediate pressure/low pressure turbine upgrades.

- Utah's failure to satisfy its obligation to provide a meaningful response to approximately one hundred pages of Sierra Club's detailed comments on crucial permitting issues.

35.     Sierra Club's Petition was timely filed within sixty (60) days of the conclusion of EPA's review period, which ended on February 26, 2016.  42 U.S.C. §7661d(b)(2).

36.     Sierra Club's Petition was based on objections that were raised with reasonable specificity during the public comment period for the Hunter Title V operating permit in accordance with 42 U.S.C. § 7661d(b)(2).

37.     EPA had sixty (60) days, until June 10, 2016, to grant or deny Sierra Club's Petition.  42 U.S.C. § 7661d(b)(2).

38.     As of the date of filing of this Complaint, EPA has not yet granted or denied the Petition.

## VIII.  CAUSE OF ACTION

39.     Sierra Club incorporates the allegations in all preceding paragraphs of this Complaint as if set forth in full herein.

40.     Administrator McCarthy had a mandatory duty to grant or deny Sierra Club's Petition within sixty (60) days after it was filed.  42 U.S.C. § 7661d(b)(2) ("The Administrator shall grant or deny such petition within 60 days after the petition is filed").

41.     It has been more than sixty (60) days since Administrator McCarthy received Sierra Club's April 11, 2016 Petition requesting that EPA object to the Title V Permit for the Hunter Plant.

8

42.     As of date of filing this Complaint, Administrator McCarthy has not granted or denied Sierra Club's Petition.

43.     Therefore, Administrator McCarthy has violated and continues to violate the Clean Air Act.  42 U.S.C. § 7661d(b)(2).

44.     This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision.  42 U.S.C. § 7604(a)(2).  Administrator McCarthy's violation is ongoing, and will continue unless remedied by this Court.

## IX.  REQUEST FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment providing the following relief:

A) A declaration that Administrator McCarthy has violated the Clean Air Act by failing to grant or deny Sierra Club's Petition requesting that EPA object to the Title V operating permit for the Hunter Plant;

B) An order compelling Administrator McCarthy to perform her mandatory duty to grant or deny Sierra Club's Petition for objection to the Title V operating permit for the Hunter Plant, by an expeditious certain date;

C) An order retaining jurisdiction over this matter until such time as Administrator McCarthy has complied with her non-discretionary duties under the Clean Air Act;

D) An order awarding Sierra Club its costs of litigation, including reasonable attorneys' fees; and

E) Such other and further relief as the Court deems just and proper.

Respectfully submitted,


s/Neil L. Henrichsen
Neil L. Henrichsen, D.C. Bar No. 420277
HENRICHSEN SIEGEL, P.L.L.C.
1150 Connecticut Avenue NW, Suite 900
Washington, DC  20036
Telephone: (202) 862-4356
Facsimile:   (202) 379-9792
(e-mail) nhenrichsen@hslawyers.com

Attorney for Plaintiff Sierra Club